IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-01746-CNS-MDB

AL'MORION GERMANY,

Plaintiff,

v.

CITY OF COLORADO SPRINGS;
BENJAMIN HENGEL, in his individual and official capacities; and
JOHN DOES 1-10, in their individual and official capacities,

Defendants.

---

**ORDER**

---

Before the Court is the Opposed Motion to Dismiss, ECF No. 16,[1] brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by Defendants City of Colorado Springs (the City or Colorado Springs) and Benjamin Hengel. In the motion, Defendants seek to dismiss each of the claims alleged in Plaintiff Al'Morion Germany's First Amended Complaint. ECF No. 15.

Having considered the parties' arguments, ECF Nos. 16, 26, 32, for the reasons explained below, the Court GRANTS the motion as to Plaintiff's claims arising under federal law. Additionally, because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, his remaining claims are dismissed.

[1] Pin cites to docket entries refer to the page number in the ECF header and not any internal pagination.

## I. BACKGROUND

The following facts are taken from the well-pleaded allegations in Plaintiff's First Amended Complaint and Jury Demand. ECF No. 15 (the Amended Complaint).

During the late evening hours of June 8, 2024, Plaintiff Al'morion Germany was at a nightclub in Colorado Springs, Colorado, *id.* ¶ 12, when he became involved in altercation that included non-parties Travis Frisbey and Kristain Frisbey, *id.* ¶ 13. Around 12:59 a.m., the altercation between Plaintiff and the Frisbeys continued onto the sidewalk outside the nightclub, *id.* ¶¶ 13, 14, where the Frisbeys "threateningly and aggressively" approached Plaintiff, *id.* ¶ 16. In response, Plaintiff "retreated by walking backwards" and pointed a gun at Ms. Fisbey, who continued to "advance[] on [Plaintiff]." *Id.* Plaintiff then "slapped Ms. Frisbey[] with the gun" and pointed the gun at Mr. Frisbey who "continued to aggressively run toward Plaintiff." *Id.* Throughout this time, Plaintiff had no involvement with "law enforcement and was unaware of [police] presence." *Id.*

At the same time, members of the Colorado Springs Police Department (CSPD), including Defendant Hengel, were also present outside of the nightclub in connection with an unrelated matter. *Id.* ¶ 17. The CSPD officers, including Defendant Hengel, "responded to the scene" and "ran toward the altercation involving Plaintiff and the Frisbeys." *Id.* ¶ 18. Upon seeing CSPD officers, Plaintiff "lowered his weapon and fled . . . away from both Mr. Frisbey and the officers," *id.* ¶ 19, and the officers, including Defendants Hengel, pursued Plaintiff, *id.* ¶ 20.

At this point, "Plaintiff denies posing any threat to officers or others upon observing the presence of the CSPD officers" and alleges that he "did not display in a threatening

manner or use the gun in a threatening manner from the moment he observed the CSPD officers." *Id.* ¶ 25. Nevertheless, once there was approximately half a block of distance between them, Defendant Hengel "drew his service weapon and fired three shots, without warning Plaintiff [] that he intended to use a firearm or other deadly force." *Id.* ¶ 21; *id.* ¶ 27. Each of the shots struck Plaintiff and caused severe injuries. *Id.* ¶¶ 22, 28–30.

Plaintiff subsequently filed suit in federal court. ECF No. 1.

## II. LEGAL STANDARD

In his amended complaint, Plaintiff brings two claims arising under federal law pursuant to 42 U.S.C. § 1983: excessive force against Defendants Hengel and the City of Colorado Springs (the City) and municipal liability against the Defendant City. Additionally, Plaintiff asserts three claims arising under state law, including excessive force against Defendant Hengel pursuant to C.R.S. § 13-21-131; negligence against Defendants Hengel and the City; and battery against Defendant Hengel. *See* ECF No. 15 (Amended Compl.) at 6–12. In their motion, Defendants seek dismissal of each claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* ECF No. 16.[2]

### A. Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must allege facts, accepted as true and interpreted in the light most favorable to the plaintiff, to state a claim to relief that is plausible on its face." *MacIntyre v. Supreme Ct. of Colorado*, No. 1:20-cv-03559-CNS-SKC, 2023 WL 4230603, at *2 (D. Colo. June 28, 2023) (quoting *Mayfield v. Bethards*,

[2] In the motion, Defendants appear to mistakenly reference Rule 12(b)(5)—the Colorado state rule corollary to Federal Rule of Civil Procedure 12(b)(6)—in connection with their arguments that Plaintiff failed to state a claim. ECF No. 16 at 2–3. Because this case is proceeding in federal court, the Court applies the standards relevant to Rule 12(b)(6) and all other Federal Rules of Civil Procedure, in its analysis.

826 F.3d 1252, 1255 (10th Cir. 2016)). A plausible claim is one that allows the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," a plaintiff fails to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quotation omitted). When assessing a claim's plausibility, "legal conclusions" contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Iqbal,* 556 U.S. at 679)). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted).

In addition to arguing that Plaintiff failed to state a claim, Defendants also contend that Defendant Hengel is entitled qualified immunity with respect to Plaintiff's excessive force claim arising under federal law. ECF No. 16 at 4–8. Like the argument that Plaintiff fails to state a claim, the assertion qualified immunity is considered under Rule 12(b)(6). *See Thomas v. Kaven*, 765 F.3d 1183, 1190–91 (10th Cir. 2014) (applying the Rule 12(b)(6) standard to review assertions of qualified immunity in a motion to dismiss).

**B. Rule 12(b)(1)**

Defendants also seek dismissal under Federal Rule of Civil Procedure 12(b)(1) on the grounds that certain of Plaintiff's state law claims are barred due to the immunity

afforded to public employees under the Colorado Governmental Immunity Act (CGIA). ECF No. 16 at 8–10. However, for the reasons set forth herein, the Court does not reach these arguments because it declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

## C. ANALYSIS

### A. Consideration of Extrinsic Exhibits on a Rule 12(b)(6) Motion to Dismiss

Defendants submitted numerous documents that they ask the Court to consider in connection with their dismissal motion, including (1) video from Defendant Hengel's body-worn camera (BWC), ECF No. 16-1; (2) a surveillance video, ECF No. 16-2; (3) the certified plea agreement into which Plaintiff entered regarding the night in question, ECF No. 16-3 (the Plea Agreement); (4) two affidavits, ECF Nos. 16-4 (Hengel Aff.), 16-6 (Kerber Aff.); and (5) photos of Defendant Hengel. *See* ECF No. 16 at 3–8. Defendants make this request not only in connection with their arguments under Rule 12(b)(1), but also as to the arguments brought pursuant to Rule 12(b)(6). *Id.*

Generally, in considering a dismissal motion under Rule 12(b)(6), "the sufficiency of a complaint must rest on its contents alone." *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (citing *Casanova v. Ulibarri,* 595 F.3d 1120, 1125 (10th Cir. 2010)). Limited exceptions to this restriction include "(1) documents that the complaint incorporates by reference, (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity, and (3) matters of which a court may take judicial notice." *Id.* (cleaned up and citations omitted). The third category, judicial notice, is governed by Federal Rule of

Evidence 201(b) and "allows the court 'to accept a matter as proved without requiring the party to offer evidence of it.'" *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1298 (10th Cir. 2025) (citing *United States v. Estep*, 760 F.2d 1060, 1063 (10th Cir. 1985)). Rule 201(b) allows courts to "judicially notice two types of facts: those that (1) are 'generally known within the trial court's territorial jurisdiction,' or (2) 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (citing Fed. R. Evid. 201(b)). Such facts are "judicially noticeable because they are 'not subject to reasonable dispute.'" *Id.* (citing Fed. R. Evid. 201(b)).

With respect to their 12(b)(6) arguments, Defendants argue that the Court should consider the BWC footage and surveillance video because they show events that clearly contradict allegations in Plaintiff's complaint. ECF No. 16 at 3. Although the case law Defendants invoke may have been persuasive at the time their argument was made, the Court can no longer accept their argument in light of *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288 (10th Cir. 2025), which was issued after the briefing on Defendant's dismissal motion was complete.

In *Fuqua*, the Tenth Circuit upheld a trial court's decision not to take judicial notice of video evidence submitted in connection with a Rule 12(b)(6) dismissal motion on the basis that it is "improper . . . to use extrinsic evidence to question 'the truth or falsity' of [a plaintiff's] allegations at [the motion to dismiss] stage in the litigation." *Id.* at 1299 (citing *Tal v. Hogan*, 453 F.3d 1266 (10th Cir. 2006)). The Tenth Circuit reasoned that because Federal Rule of Evidence 201(b) provides no exception for the introduction of such disputed evidence, it would be "inappropriate to weigh evidence on a motion to dismiss."

*Id.* at 1300. (citation omitted). The Tenth Circuit further explained that "dash-and body-camera videos differ from public records containing indisputable facts, like birth or death certificates" because their "contents are 'subject to reasonable dispute.'" *Id.* (citation omitted).

The situation in which the Court finds itself now is similar to the one presented in *Fuqua*. And while Defendants seek to get around this requirement by arguing that district courts have been permitted to consider external evidence that "clearly contradict[ed] allegations in a complaint" in the past, ECF No. 16 at 3 (citing *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019)), the Tenth Circuit made clear in *Fuqua* that this is no longer permissible. *See* 157 F.4th at 1300 (Courts may not "consider outside evidence on a motion to dismiss, *even if the evidence directly contradicts the complaint's allegations*" unless an exception applies.) (citation omitted; emphasis added). Thus, the Court may not consider the submitted videos in connection with Defendants' Rule 12(b)(6) dismissal arguments. Likewise, because the submitted affidavits and photos are offered in support of Defendants' version of the facts and to dispute the allegations contained in the complaint, the Court may not consider them for the same reasons. *See id.* at 1301 ("[defendants] must wait until summary judgment (or trial) to attack the complaint's factual allegations"). As Defendants do not argue that the videos or affidavits are incorporated by reference or central to the claims in Plaintiff's complaint, the Court sees no other basis on which it may consider the external exhibits in connection with Defendants' arguments under Rule 12(b)(6).

However, the same is not true of Plaintiff's Plea Agreement arising from the events on the night of the shooting, *see* ECF No. 16-3, which Defendants argue is judicially noticeable. *See* ECF No. 16 at 4. Defendants are correct that "[f]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *Wilson v. Pauling*, 457 F. Supp. 3d 965, 974 (D. Colo. 2020) (citing *St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979)). Relevant here, judicially noticeable facts from related proceedings may include plea agreements. *See, e.g.*, *Halik v. Darbyshire*, No. 20-cv-01643-PAB-KMT, 2021 WL 4556188, at *5 (D. Colo. Aug. 23, 2021), *report and recommendation adopted*, No. 20-cv-01643-PAB-KMT, 2021 WL 4305011 (D. Colo. Sept. 22, 2021) ("The plea agreement is a court filing that is subject to judicial notice; as such, the document will be considered in connection with the motion to dismiss.") (collecting cases). However, as Plaintiff notes, *see* ECF No. 26 at 4–5, such "public documents 'may only be considered to show their contents, not to prove the truth of matters asserted therein.'" *Wilson*, 457 F. Supp. 3d at 974 (citing *Tal*, 453 F.3d at 1264–65 n.24); *see also Schendzielos v. Silverman*, 139 F. Supp. 3d 1239, 1251 (D. Colo. 2015) ("[W]hile the Court can take judicial notice of the attachments to [defendant's] motion to dismiss as they are public records, it cannot take the facts asserted in the filings to be true."). Accordingly, the Court may consider the Plea Agreement when analyzing Defendants' arguments under Rule 12(b)(6) not for the truth of the facts contained therein, but simply to establish that the "crime at issue is a felony." *Vette v. K-9 Unit Deputy Sanders*, 989 F.3d 1154, 1170 (10th Cir. 2021).

**B. Plaintiff's Excessive Force Claim Against Defendant Hengel Under § 1983**

In the motion, Defendants put forth five primary arguments in support of dismissal, including that (1) Defendant Hengel is entitled to qualified immunity from suit as to the claims against him in his individual capacity, ECF No. 16 at 4–8; (2) Plaintiff's state law claims fail because Defendant Hengel's conduct was objectively reasonable, *id.* at 5; (3) Plaintiff's official capacity claims against Defendant Hengel are redundant and must be dismissed, *id.* at 15; (4) Plaintiff failed to state a claim for municipal liability, *id.* at 12–14; and (5) CGIA immunity bars Plaintiff's negligence and battery claims, *id.* at 8–12. In response, Plaintiff opposes all requested relief. *See* ECF No. 26.

1. *Qualified Immunity*

Defendants first seek dismissal of Plaintiff's claim for excessive force arising under federal law against Defendant Hengel on the basis of qualified immunity.

"[Q]ualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Stoltenberg*, 182 F.4th 903, 910 (10th Cir. 2026) (citing *Mullenix* v. *Luna*, 577 U.S. 7, 11 (2015) (*per curiam*)). To survive a qualified immunity defense at the motion to dismiss stage, a plaintiff must have alleged sufficient facts to show that: (1) the defendant plausibly violated his or her constitutional rights, and (2) the law clearly established those rights at the time. *Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir. 2025) (quoting *Robbins*, 519 F.3d at 1249). While qualified immunity can be raised at the pleading stage, doing so "subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Peterson v.*

*Jensen,* 371 F.3d 1199, 1201 (10th Cir. 2004) (citation omitted). "[I]n reviewing a Rule 12(b)(6) motion in the context of qualified immunity, a district court should not dismiss a complaint 'for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* at 1201–02 (citing *Currier v. Doran,* 242 F.3d 905, 917 (10th Cir. 2001)). At this stage, the Court accepts all well-pleaded factual allegations as true and views them "in the light most favorable to the plaintiff." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (quoting *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

The Court has discretion to begin the qualified immunity analysis with either prong—both of which must be satisfied to avoid dismissal. *See Hemry v. Ross*, 62 F.4th 1248, 1253 (10th Cir. 2023) ("If the plaintiff fails to satisfy either prong of qualified immunity, his suit fails. Accordingly, we have 'discretion to decide the order in which these two prongs should be addressed,' and need not address both."). If Plaintiff fails to satisfy one prong, the Court need not address the other. *Id.*

With that, the Court turns first to the second prong of the qualified immunity analysis: whether the law was clearly established.

*a. Clearly Established*

With respect to the second prong of the qualified immunity analysis, Defendants argue that Plaintiff fails to allege that Defendant Hengel's conduct violated clearly established law. ECF No. 16 at 7–8. In response, Plaintiff attempts to meet his burden by reference to Colorado state law and citation to a single U.S. Supreme Court case. ECF No. 26 at 9–11. Neither method is successful. Explained below, because Plaintiff fails to

identify any clearly established law to support the alleged constitutional violation, Defendant Hengel is entitled to qualified immunity.

"A right is clearly established in this circuit when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Kaven*, 765 F.3d at 1194 (internal quotation marks omitted). The dispositive question is "whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. at 12 (citation and internal quotation marks omitted)). Indeed, "[c]laims of excessive force turn 'very much on the facts of each case,' and a police officer is entitled to qualified immunity unless existing prior precedent 'squarely governs' the specific facts at issue." *Salgado v. Smith*, No. 24-2068, 2025 WL 1879232, at *4 (10th Cir. July 8, 2025), *cert. denied*, 146 S. Ct. 1505, 223 L. Ed. 2d 510 (2026) (citing *Lewis v. City of Edmond*, 48 F.4th 1193, 1199 (10th Cir. 2022)). Specificity "is particularly important in excessive force cases," *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (*per curiam*), "because circumstances that are 'tense, uncertain, and rapidly evolving' often force police officers to make 'split-second judgments . . . about the amount of force that is necessary in a particular situation,'" *Lewis*, 48 F.4th at 1198 (quoting *Graham*, 490 U.S. at 397). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (internal quotation marks and citations omitted). At bottom, "'[t]he salient question is whether the state of the law' at the time of an incident

provided 'fair warning' to the defendants 'that their alleged conduct was unconstitutional.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Hope v. Pelzer,* 536 U.S. 730, 741 (2002) (cleaned up)).

Viewing the allegations in the light most favorable to Plaintiff as the non-moving party, the facts here are that Defendant Hengel and other CSPD officers were standing outside a nightclub when an altercation between Plaintiff and the Frisbeys that began inside continued onto the sidewalk. ECF No. 15 ¶¶ 12–14, 17. During that altercation, Plaintiff took out a gun, pointed it at Ms. Frisbey, and "slapped [her] with the gun." *Id.* ¶ 16. Plaintiff also pointed a gun at Mr. Frisbey as he "continued to aggressively run toward [Plaintiff]." *Id.* After that, Defendant Hengel and other CSPD officers "responded to the scene and ran toward the altercation involving Plaintiff and the Frisbeys." *Id.* ¶ 18. Upon seeing the CSPD officers, Plaintiff "lowered his weapon and fled . . . away." *Id.* ¶ 19. Defendant Hengel then pursued Plaintiff and when there was approximately half a block of distance between them, drew his service weapon, and fired three shots without warning Plaintiff that he intended to use a firearm or other deadly force. *Id.* ¶¶ 20–22.

With these alleged facts as background, and although "[P]laintiff bears the burden of citing . . . what he thinks constitutes clearly established law," *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010), Plaintiff cites only one case in connection with his argument that Defendant Hengel violated his clearly established rights: *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).[3] *See* ECF No. 26 at 9–11. But as Defendants correctly

[3] While Plaintiff arguably also cited *Graham v. Conner*, 490 U.S. 386 (1989) to meet his burden of showing that the law is clearly established, it appears that citation was included in the response only to explain the qualified immunity test. *See* ECF No. 26 at 9–10. Moreover, even if Plaintiff did cite *Graham* to show that Defendant Hengel violated clearly established law, that argument fails because the circumstances in

note, ECF No. 32 at 6, *Garner*—which stands for the general proposition that deadly force cannot be used when a suspect poses no immediate threat to officers or others—is inapposite. In *Garner*, the Supreme Court considered whether police officers could use deadly force "to prevent the escape of an *apparently unarmed suspected* felon" and concluded that "such force may not be used *unless* it is necessary to prevent the escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Garner*, 471 U.S. at 3 (emphasis added). Even viewing the allegations in the light most favorable to Plaintiff, the only reasonable inference to draw is that Defendant Hengel believed (or at least, had probable cause to believe) that Plaintiff was armed when deadly force was used given that Defendant Hengel acted in response to an altercation during which Plaintiff brandished and used a gun. ECF No. 15 ¶¶ 16, 19, 24.[4] Additionally, after seeing CSPD officers approach, Plaintiff "fled" the scene. *Id.* ¶¶ 18, 1. Even with all inferences in Plaintiff's favor, it was not objectively unreasonable for Defendant Hengel to use deadly force "to prevent [Plaintiff's] escape" or because he "believe[d] that [Plaintiff] pose[d] a significant threat of death or serious physical injury to the officer or others." *Garner*, 471

---

*Graham* are not sufficiently similar to the facts alleged here. In *Graham*, the excessive force claim arose after officers physically lifted an unconscious suspect, placed him faced down on the hood of their car, and threw him headfirst into a police car while ignoring the suspect's request for sugar to address a diabetic reaction after the suspect regained consciousness. *Id.* at 389–90.

[4] The Court notes that although Plaintiff alleges that he "did not display [the gun] in a threatening manner or use the gun in a threatening manner from the moment he observed the CSPD officers," ECF No. 15 ¶ 25, he also pleads that "Defendant Hengel *claimed* Plaintiff possessed a handgun during the altercation outside [the nightclub] and did not drop it until *after* being shot," *id.* ¶ 24 (emphasis added)—allegations Plaintiff included in the complaint without attempting to refute them.

U.S. at 3. Thus, Plaintiff's sole citation to *Garner* does little to support his contention that Defendant Hengel violated clearly established law.

Moreover, if anything, the clearly established law demonstrates that Defendant Hengel *did not* violate Plaintiff's constitutional rights. As the Tenth Circuit has explained, "there are two basic situations that would justify an officer's belief that a fleeing suspect poses a threat of serious physical harm: (1) where the suspect has placed the officer in a dangerous, life threatening situation; or (2) where the suspect is fleeing from the commission of an inherently violent crime." *Ryder v. City of Topeka*, 814 F.2d 1412, 1419 (10th Cir. 1987) (discussing *Garner*, 471 U.S. at 11). To find the "latter situation does not require that the officer's life actually be threatened by the suspect. Rather, the officer is allowed to infer that the suspect is inherently dangerous by the violent nature of the crime." *Id.* In this case, Plaintiff alleges that Defendant Hengel pursued him in "respon[se] to" a violent altercation in which Plaintiff used a gun to threaten and hit others. ECF No. 15 ¶¶ 16, 18. Based on Plaintiff's own allegations, there is no question that Defendant Hengel was responding to Plaintiff's participation in a crime of a "violent nature." *Ryder*, 814 F.2d at 1419; *see also Teetz as next friend of Lofton v. Stepien*, 142 F.4th 705, 725 (10th Cir. 2025) ("Our cases that find the *Larsen* factors weigh in law enforcement's favor almost always find the officers reasonably perceived the suspect possessed a weapon that could be used to inflict deadly injury or serious physical harm.") (collecting cases).[5]

[5] Additionally, allegations that a suspect "possessed a firearm" and "show[ed] it to people while involved in a fight" were key facts recently considered by the Tenth Circuit in determining that an officer did not violate clearly established law when using deadly force. *See Est. of Deweese v. Hancock*, --- F.4th ----, 2026 WL 2416824, at *4 (10th Cir. Aug. 19, 2026); *see also id.* at *7 (noting that the suspect "was also not 'armed only with a weapon of short-range lethality'—he was armed with a gun" while "not on his own property but in a public space").

Another Tenth Circuit decision, *Thomson v. Salt Lake Cnty.*, helps to further illustrate this point. There, the Tenth Circuit concluded that it was reasonable for police officers "to believe that [the plaintiff] was an immediate threat" given that he "was in possession of a firearm, was known to have threatened [another civilian] with a firearm, and had not put his weapon down as instructed by the officers." 584 F.3d 1304, 1312, 1319 (10th Cir. 2009). This situation is closely analogous to the allegations before the Court now given that Defendant Hengel believed Plaintiff had a firearm, and Plaintiff used that firearm to threaten two people and hit one, fled from officers who responded to the scene, and did not drop the weapon until after he was shot. Thus, like in *Thomson*, even if Defendant Hengel "was mistaken in his belief that [Plaintiff] posed a risk to him, it was not objectively unreasonable for him . . . to use deadly force" because even when "viewed in the light most favorable" to Plaintiff, his allegations "paint[] a picture that [the officers] were faced with an armed suspect in an agitated condition, who . . . appeared willing and able to attack." *Id.* at 1320 (citing *Estate of Larsen*, 511 F.3d at 1263).

Additionally, even if Defendant Hengel failed to follow C.R.S. § 18-1-707 governing police officers' use of deadly force in the state of Colorado as Plaintiff contends, *see* ECF No. 26 at 9–10, "this would not necessarily deprive him of qualified immunity from liability under *federal* law." *Cummings v. Dean*, 913 F.3d 1227, 1243 (10th Cir. 2019). The question of whether an officer "violated clearly-established state law . . . is an entirely separate question from whether that failure violated clearly-established federal law." *Id.* (citing *Davis v. Scherer*, 468 U.S. 183, 194 (1984)) (emphasis in original). As the Supreme Court has explained, "[o]fficials sued for constitutional violations do not lose their qualified

immunity merely because their conduct violates some statutory or administrative provision" under state law. *Davis*, 468 U.S. at 194; *see also Stanley v. Gallegos*, 852 F.3d 1210, 1214 (10th Cir. 2017) ("[T]he focus of § 1983 is federal law, not state law.").

Accordingly, because Plaintiff has failed to meet his burden of identifying "any case from the Supreme Court or [Tenth Circuit] finding a defendant liable under federal law in factually similar circumstances," *Cummings*, 913 F.3d at 1243, Defendant Hengel is entitled to qualified immunity on Plaintiff's claims brought pursuant to § 1983.[6]

**C. Plaintiff's Claims Against Defendant City of Colorado Springs**

Defendants also move to dismiss Plaintiff's claims against municipal Defendant City of Colorado Springs under 42 U.S.C. § 1983. ECF No. 16 at 12–14. In the complaint, Plaintiff alleges that the Defendant City, through it's the CSPD, "maintained policies, customs, or practices that were the moving force behind" the alleged constitutional violations Plaintiff suffered, including: "a. Authorizing or tolerating the use of deadly force against fleeing, non-threatening suspects[;] b. Failing to adequately train officers on the constitutional limits of deadly force under *Tennessee v. Garner* and *Graham v. Connor*[; and] c. Failing to supervise or discipline officers for excessive force, fostering a culture of impunity." ECF No. 15 ¶ 54.

[6] Defendants also move to dismiss claims against Defendant Hengel in his official capacity because they are redundant to the claims Plaintiff brings against the Defendant City. ECF No. 16 at 15. In response, Plaintiff states that although "[c]ounsel for Defendants did not confer with Plaintiff's counsel regarding this portion of the Motion to Dismiss," "Plaintiff does not object to dismissing redundant claims against Defendant Hengel in his official capacity, understanding that the same claims against the city remain and that the claims against Defendant Hengel in his individual capacity also remain." ECF No. 26 at 13. Accordingly, Plaintiff's claims against Defendant Hengel in his official capacity are dismissed.

In the motion, Defendants argue that although Plaintiff raises three separate theories of liability against Defendant Colorado Springs, each is insufficiently pleaded and cannot support liability because Plaintiff fails to plead the existence of any municipal policy, practice, or custom. *See* ECF No. 16 at 12–14. In a single paragraph response, Plaintiff argues that municipal liability is plausibly pleaded. *See* ECF No. 26 at 12. Explained below, Plaintiff is incorrect, and Defendants' motion to dismiss the claims against the Defendant City is granted.[7]

1. *Legal Standard for Municipal Liability*

As an initial matter, the Tenth Circuit has held that, in a municipal liability case under § 1983, there is no basis for holding a city liable in the absence of use of excessive force. *See Hinton v. City of Elwood*, 997 F.2d 774, 782–83 (10th Cir. 1993). Additionally, to establish a claim for "municipal liability under § 1983, the plaintiff must show: (1) a municipality enacted or maintained a policy, (2) the municipality was deliberately indifferent to the resulting constitutional violations, and (3) the policy caused the underlying constitutional violation." *Arnold v. City of Olathe*, 35 F.4th 778, 795 (10th Cir. 2022) (citing *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013)). "A court may find that the challenged practice is an official policy or custom for municipal liability purposes if 'it is a formally promulgated policy, a well-settled custom

[7] Plaintiff's first claim for excessive force against the Defendant City is dismissed for the same reasons as Plaintiff's second claim for municipal liability: Plaintiff fails to allege facts sufficient to state either claim. In reviewing the complaint, Plaintiff's two claims against the Defendant City arise from the same premise: that the City maintained policies, custom, or practices regarding police officers' use of force that resulted in Plaintiff's injuries. *Compare* ECF No. 15 ¶¶ 43–52 *and id.* ¶¶ 53–56. And in responding to Defendants' dismissal motion, Plaintiff invokes allegations pleaded in connection with both claims. *See* ECF No. 26 at 12 (citing ECF No. 15 ¶¶ 43–48, 54–56). Accordingly, the Court considered Defendants' dismissal arguments as to both claims against the City.

or practice, a final decision by a municipal policymaker, or a deliberately indifferent training or supervision.'" *Id.* (citing *Schneider*, 717 F.3d at 770). "A municipality acts with deliberate indifference when it has 'actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation,' and the municipality 'consciously or deliberately chooses to disregard the risk of harm.'" *Id.* (citing *Schneider*, 717 F.3d at 771). "A plaintiff can establish a direct causal link by showing that the municipal practice was closely related to the deprivation of rights. To do so, the plaintiff must prove that the municipality was the 'moving force' behind the alleged injury." *Id.* (citing *Schneider*, 717 F.3d at 770).

*a. Policy, custom, or practice of using deadly force*

Defendants first argue that Plaintiff "fails to provide any factual allegations supporting a claim" that the City had a policy authorizing "the use of deadly force against fleeing, non-threatening suspects." ECF No. 16 at 13. In response, Plaintiff contends that the complaint "alleges policies of authorizing excessive force on fleeing suspects, failing to train on *Garner/Graham* limits, and failing to supervise/discipline on statutory limits on the use of deadly force, fostering impunity." ECF No. 26 at 12 (citing ECF No. 15 ¶¶ 3, 43–48, 54–56). Plaintiff further argues that the amended complaint's reference to a "prior incident (De'Von Bailey shooting) shows a pattern," *id.* (citing ECF No. 15 ¶ 55), and that Defendant Hengel's failure to follow certain state laws and CSPD policy "indicat[es] a lack of training and supervision," *id.* Reviewing the specific allegations Plaintiff cites in his response, Plaintiff has failed to plead the existence of *any* City policy, custom, or practice—let alone one of using deadly force against fleeing, non-threatening suspects.

Although the amended complaint alleges that Defendant Hengel acted in accordance with the City's "promulgation, creation, implementation, or enforcement of [City] customs, or practices that failed to provide that CSPD officers . . . could use deadly force against fleeing suspect only when constitutional requirements for such force was met," ECF No. 15 ¶ 44, and that the Defendant City "adheres to a policy and practice of permitting the use of deadly force on a felony suspect where there is probable cause to believe the suspect had earlier committed a crime with a gun, even when there is no immediate risk of death or serious bodily injury later when the officer uses deadly force," *id.* ¶ 46, Plaintiff's allegations do not identify any *specific* policy or custom in support of his conclusions. Instead, his allegations are "nothing more than naked assertions . . . based on the conclusory allegation that some unidentified aspect of the City's unwritten policies and customs actually encouraged such arrests as a general matter." *Baumann v. O'Neil*, No. 14-cv-02751-CMA-NYW, 2015 WL 5121800, at *5 (D. Colo. Aug. 10, 2015). Such unsupported "conclusory allegations" about the existence of a municipal "policy, custom and/or practice" that "cites no particular facts in support of [its] 'threadbare recitals of the elements of a cause of action'" are insufficient to support a § 1983 claim for municipal liability. *Carbajal v. McCann*, No. 18-1132, 808 F. App'x 620, 638 (10th Cir. Mar. 30, 2020) (citing *Mocek v. City of Albuquerque*, 813 F.3d 912, 934 (10th Cir. 2015)) (cleaned up); *see also Pyle v. Woods*, 874 F.3d 1257, 1266 (10th Cir. 2017) (explaining that alleging that it was municipal policy "to query employees' prescription drug records without a warrant" is "the type of formulaic recitation of the elements of a cause of action that is insufficient to meet the *Twombly* pleading standard" (internal quotation and citation

omitted)); *Blauch v. City of Westminster, Colorado*, No. 20-cv-00431-LTB-GPG, 2020 WL 7350437, at *1 (D. Colo. Oct. 20, 2020), *aff'd*, 859 F. App'x 327 (10th Cir. 2021) (dismissing municipal liability claims where plaintiff alleged the existence of a "municipal policy or custom" involving "falsifying and ignoring material evidence in multiple reported cases," but the "allegation [was] not supported by particular facts").

That the complaint contains allegations about "one prior incident, even if it was a constitutional violation sufficiently similar to put officials on notice of a problem, does not describe a pattern of violations." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1287 (10th Cir. 2019) (citing *Coffey v. McKinley Cty.*, 504 F. App'x 715, 719 (10th Cir. 2012)) (cleaned up). And here, Plaintiff fails to establish even that much because the complaint lacks sufficient detail for the Court to assess whether the single prior incident has any similarities to the facts here. Instead, the complaint alleges only that CSPD officers were involved in a 2019 "shooting" with another individual named De'von Bailey, ECF No. 15 ¶ 55,[8] but includes *no facts* about that would allow the Court to conclude (or even infer) that the incident involving Mr. Bailey was sufficiently similar to Plaintiff's encounter to establish a custom or practice of deliberate indifference.

Finally, that Plaintiff has alleged that Defendant Hengel failed to follow C.R.S. § 13-1-707 and CSPD general Order 500.04 during his encounter with Plaintiff is insufficient to establish the existence of a municipal policy or custom. Plaintiff points to *no* municipal policy, custom, or practice that led a single municipal employee (Defendant Hengel) to

[8] The only allegation in the complaint regarding this 2019 shooting states, in full: "These policies or customs reflect deliberate indifference to Plaintiff's Constitutional rights, as evidenced by prior incidents, including the shooting of De'Von Bailey in 2019." ECF No. 15 ¶ 55.

allegedly violate Plaintiff's constitutional rights. Thus, even if Defendant Hengel's alleged failures to follow state law and local policy could show that Plaintiff suffered a constitutional violation, without more, such facts are insufficient establish a "[municipal] policy or custom" that led "to Plaintiff's alleged constitutional injuries. *Tatten v. City & Cnty. of Denver*, No. 16-cv-01603-RBJ-NYW, 2017 WL 5172244, at *15 (D. Colo. Feb. 3, 2017), *report and recommendation adopted*, No. 16-cv-01603-RBJ-NYW, 2017 WL 1435854 (D. Colo. Mar. 29, 2017), *aff'd*, 730 F. App'x 620 (10th Cir. 2018) (citing *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)).

This failure is critical to Plaintiff's claim for municipal liability under any theory because a municipality can be held liable under § 1983 only for its own unconstitutional customs or policies, and not for its employees' tortious acts. *Barney*, 143 F.3d at 1307. However, explained below, this claim fails for additional reasons, as well.

b. *Failure to train*

In addition to failing to identify any specific policy, custom, or practice, Plaintiff's failure to train claim fails for additional reasons, as well.

As the Supreme Court has warned, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To successfully plead a failure to train claim that satisfies the stringent deliberate indifference standard, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional

rights." *Id.* at 62 (citation omitted); *see also Waller*, 932 F.3d at 1288–89 (discussing same).

As noted above, the complaint identifies only one single prior incident and fails to plead any facts at all to demonstrate how that incident is similar to what occurred with Plaintiff—let alone any additional facts to show the "necessary *pattern* of similar constitutional violations to establish deliberate indifference." *Waller*, 932 F.3d at 1285 (emphasis added); *see also Connick*, 563 U.S. at 62 ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." (citing *Bryan Cty.,* 520 U.S., at 409). As the Tenth Circuit has explained, reference to a single "prior incident" is generally insufficient to establish deliberate indifference for a municipal failure to train claims. *See, e.g.*, *Sandberg v. Englewood, Colo.*, 727 F. App'x 950, 964 (10th Cir. 2018) (plaintiff failed to adequately allege a custom or policy where the complaint "never set[ ] out the text of any [municipal] policy" and failed to "describe any prior incidents that would have established a pattern or practice on the part of the city that could cause [the Court] to view subsequent inaction as evidence of a policy of deliberate indifference"); *Salazar v. Castillo*, No. 12-cv-01481-JLK, 2013 WL 69154, at *6 (D. Colo. Jan. 7, 2013) ("Plaintiff cannot state a plausible claim of municipal liability by identifying a single incident of alleged violations and then, without any further factual substantiation, contending that such actions were consistent with and caused by a municipal policy, procedure, or failure to train."). However, "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that

will cause violations of constitutional rights." *Connick*, 563 U.S. at 62 (citing *Bryan Cty.,* 520 U.S., at 407).

And while, in limited instances, a single constitutional violation may satisfy the requirements for municipal liability under § 1983 if the alleged violation is a "highly predictable and plainly obvious" consequence of a municipality's failure to train and/or supervise its employees, predictable' or 'plainly obvious' consequence of a municipality's action." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002) (citing *Barney,* 143 F.3d at 1307), Plaintiff's allegations do not establish such a situation. Indeed, alleging that Defendant Hengel used deadly force to stop a fleeing suspect who he had just witnessed use a firearm to threaten two people and injure one of them does not establish that the City failed to train CSPD officers. Nor do such allegations establish that the Defendant City's actions "amount[ed] to deliberate indifference to the rights of persons with whom the police come into contact," *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989), or was the result of a municipal actor's disregard for a known or obvious consequence of such a failure, *see Bryan Cty. Bd. of Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). Though the complaint alleges that the Defendant City "consciously or deliberately chose to disregard [the] risk of harm" by adhering to a policy that violated individuals' constitutional rights, ECF No. 15 ¶ 47, absent additional factual allegations, such conclusory allegations do not establish that the Defendant City's policymakers acted with "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees" such that their actions could constitute a

"conscious disregard for the consequences of their action," *Connick*, 563 U.S. at 62 (citing *Bryan Cty.,* 520 U.S., at 407).

Because Plaintiff fails to allege facts to establish any policy or the Defendant City's deliberate indifference, his failure to train theory fails.[9]

c. *Failure to supervise or discipline*

With respect to Plaintiff's failure to supervise or discipline theory, Defendants argue that "[t]he Amended Complaint does not allege how CSPD tolerates systematic unlawfulness of its officers—whether it is the use of deadly force or failing to supervise or discipline." ECF No. 16 at 13. Upon review of Plaintiff's pleading, this deficiency is clear.

The complaint contains only a handful conclusory allegations relevant to a failure to supervise theory.[10] Plaintiff's allegations regarding the City's failure to discipline CSPD officers are similarly thin.[11] Despite this, Plaintiff offers no additional factual allegations to support any of his conclusory statements or demonstrate that "the municipality failed to investigate or take corrective action on any prior meritorious claim of excessive force."

---

[9] Plaintiff's attempts to establish municipal liability on a failure to train theory fail for other reasons, as well. For example, Plaintiff "do[es] not allege specific facts about who, what, where, and when that establish a plausible claim" that the Defendant City failed to train or supervise its officers. *See Myers v. Koopman*, No. 09-cv-02802-REB-MEH, 2010 WL 3843300, at *5 (D. Colo. Sept. 27, 2010), *order clarified*, No. 09-cv-02802-REB-MEH, 2011 WL 320564 (D. Colo. Jan. 28, 2011), as is required for a failure to train claim. *See, e.g.*, *Tivis v. City of Colorado Springs*, No. 19-cv-00867-KMT, 2020 WL 1166842, at *5 (D. Colo. Mar. 11, 2020) ("Mere conclusory allegations that an officer or group of officers are inadequately trained are not enough to plausibly state a failure to train or supervise claim against a municipality.").

[10] *See* ECF No. 15 ¶ 3 (alleging that the City supervises CSPD officers); ¶ 9 (alleging that the City supervises the CSPD); ¶ 11 (alleging the existence of unknown "CSPD officers or supervisors who participated in or contributed to the incident"); ¶ 44 (alleging that Defendant Hengel's actions "were the direct result of" the City's "deliberate choice . . . of not adequately training or supervising CSPD officers"); *id.* (alleging that "the need for . . . supervision was so obvious, and the inadequacy of . . . supervision was so likely to result in the violation of constitutional rights"); *id.* ¶ 54 (alleging that the City "fail[ed] to supervise" CSPD officers).

[11] *See* ECF No. 15 ¶ 9 (alleging that the Defendant City is responsible for disciplining CSPD); *id.* ¶ 54 (alleging that the Defendant City "fail[ed] to . . . discipline" CSPD officers).

*Trujillo v. Campbell*, No. 09-cv-03011-CMA-KLM, 2012 WL 3609747, at *7 (D. Colo. Aug. 22, 2012) (citation omitted). Absent supportive factual allegations, Plaintiff's failure to supervise and discipline theories of municipal liability fail. *See, e.g.*, *Waller*, 932 F.3d at 1288–89 (finding that plaintiff failed to allege a failure-to-supervise theory of municipal liability where the complaint merely "allege[d] in conclusory fashion that Denver knew or should have known that its employees were inadequately supervised" but did not allege "any facts regarding any supposed supervisory deficiencies"); *Wright v. City & Cnty. of Denver*, No. 25-cv-00669-NYW-STV, 2025 WL 4709149, at *9 (D. Colo. Sept. 10, 2025) (determining that plaintiff failed to state a claim for municipal liability where the "allegations concerning the municipal Defendants' alleged failure to adequately train, supervise, or discipline its officers are entirely conclusory" and plaintiff "allege[d] elements of a municipal liability theory without alleging any facts to support those elements") (collecting cases); *Adkins v. City of Colorado Springs*, No. 20-cv-01022-KMT, 2021 WL 810107, at *12 (D. Colo. Mar. 3, 2021) (dismissing failure to supervise claim where "the Complaint alleges no facts from which to discern any *specific* supervisory deficiencies by Colorado Springs, or how the City's purportedly inadequate supervision of Officer Bellow caused Plaintiff's injury, or how such injury could have been avoided with different or improved supervision") (collecting cases).[12]

[12] Nor are Plaintiff's claims against the Defendant City saved by reference to *Erickson v. City of Lakewood, Colorado*—the only case law cited in his discussion of municipal liability. *See* ECF No. 26 at 12 (citing 489 F. Supp. 3d 1192, 1208 (D. Colo. 2020)). In fact, contrary to Plaintiff's invocation of *Erickson* as a case with factual allegations similar to Plaintiff's that survived a motion to dismiss, *see id.*, in *Erickson*, the court *granted* the municipality's motion to dismiss. *See Erickson*, 489 F. Supp. 3d at 1208 (denying plaintiff's claim for municipal liability because plaintiff did "not plausibly state[] a *Monell* claim under *any* of [his] proffered theories") (emphasis added).

In sum, under any theory of municipal liability, Plaintiff's allegations are insufficient to establish that the Defendant City was the was the "moving force" behind the alleged constitutional violation Plaintiff suffered. *See Arnold*, 35 F.4th at 795. As a result, Plaintiff's claims against the Defendant City are dismissed.

**D. Plaintiff's State Law Claims**

Having dispensed with Plaintiff's claims arising under federal law above, only Plaintiff's state law claims remain. As alleged in the complaint, the Court had supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. ECF No. 15 ¶ 6. However, when a district court dismisses all federal claims, in its discretion, "the court may, *and usually should*, decline to exercise jurisdiction over any remaining state claims." *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) (emphasis added); *see also* 28 U.S.C. § 1367(c)(3) ("district courts may decline to exercise supplemental jurisdiction over a claim" if ". . . the district court has dismissed all claims over which it has original jurisdiction[.]").

Here, because the Court has dismissed all of Plaintiff's claims arising under federal law, it no longer has supplemental jurisdiction over the remaining state law claims. *See Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025) ("With the loss of federal-question jurisdiction, the court loses as well its supplemental jurisdiction over the state claims."). Accordingly, Plaintiff's state law claims are dismissed without prejudice for lack of jurisdiction pursuant to 28 U.S.C. § 1367(c)(3).[13]

[13] The Court notes that discovery has been stayed in this matter pending resolution of the motion to dismiss. *See* ECF No. 28. Accordingly, the case is in its infancy and dismissing Plaintiff's state law claims without prejudice will have minimal disruption to Plaintiff's case.

## A. CONCLUSION

Consistent with the foregoing, Defendants' Opposed Motion to Dismiss, ECF No. 16, is GRANTED, and Plaintiff's claims brought pursuant to 42 U.S.C. § 1983 are dismissed. Additionally, because all of Plaintiff's claims arising under federal law are now dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, all of Plaintiffs' claims are dismissed without prejudice.

DATED this 20th day of August 2026.

BY THE COURT:

____________________________________
Charlotte N. Sweeney
United States District Judge